UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| FRANK LIU,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF RENO and SCOTT GAUTHIER,<br><br>　　　　　　　　　　Defendants. | Case No. 3:22-CV-00551-CLB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND DENYING PLAINTIFF'S MOTION FOR STAY OF DISCOVERY**<br><br>[ECF No. 24, 25] |

This case involves a civil rights action filed by Plaintiff Frank Liu ("Liu") against Defendants City of Reno ("Reno") and Scott Gauthier ("Gauthier") (collectively referred to as "Defendants"). Currently pending before the Court are two separate but related motions. The first motion is Defendants' motion for protective order which seeks to prevent the dissemination of information produced or exchanged in the course of this case for purposes other than the litigation. (ECF Nos. 24, 24-5.) Liu responded, (ECF No. 27), and Defendants replied. (ECF No. 30.) The second motion is Liu's motion to stay discovery pending the disposition of the motion for protective order (referred to hereafter as the "stay motion."). (ECF No. 25.) Defendants responded, (ECF No. 29), and Liu replied. (ECF No. 31.) For the reasons stated below, the Court grants Defendants' motion for a protective order and denies Liu's stay motion as moot.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

　　A.　**Factual Summary**

On December 13, 2022, Liu initiated this action by filing an application to proceed *in forma pauperis* and along with a *pro se* civil rights complaint. (ECF Nos. 1, 1-1.) On December 22, 2022, the Court issued a screening order pursuant to 28 U.S.C. § 1915A and granted Liu an opportunity to either amend his complaint or proceed as outlined in the order. (ECF No. 3.) Liu filed a first amended complaint ("FAC") on January 27, 2023. (ECF No. 9.) The Court reviewed the FAC and allowed Liu to proceed against Reno and

Gauthier on the following claims: (1) violation of the Fourth Amendment as it relates to *Terry v. Ohio*, 392 U.S. 1, 19 (1968); and (2) violation of the Fourteenth Amendment as it relates to "racial profiling… without due process." (ECF No. 10 at 2.)

Liu's FAC alleges the following: On December 3, 2022, Gauthier, an officer with the Reno Police Department, initiated contact with Liu, while he was parked in his car in the parking lot of a Planet Fitness. (ECF No. 9 at 6.) Liu, who is homeless and an Asian American, was video editing in his vehicle at the time Gauthier approached him. (*Id*.) Gauthier required Liu to provide proof of identification and ran Liu for warrants, which Liu asserts was an "unlawful *Terry*[1] Stop" used as pretext to run Liu's information for warrants. (*Id.* at 7.) Liu alleges he was targeted for being homeless, discriminated against based on his race, and Gauthier violated his constitutional rights by unlawfully detaining him. (*Id*. at 9.)

### B. Motion for Protective Order

On July 3, 2023, Defendants filed a motion for protective order to preclude Liu from posting materials produced during discovery on YouTube. (ECF No. 24.) To this end, Defendants provide a proposed protective order which states that "[a]ll information produced or exchanged in the course of this case (other than information that is publicly available) shall be used by the party or parties to whom the information is produced *solely for the purpose of this case*." (ECF No. 24-5 at 3 (emphasis added).) The proposed order also provides for the designation of some information as "confidential" which, unless otherwise permitted by statute, rule or prior court order, would require the party utilizing the item in a court filing to follow the proper procedure for filing the item under seal. (*Id.* at 4.)

In the motion, Defendants describe Liu's activities as a "YouTuber," including "publicly posted videos on YouTube concerning the subject of this case as well as his separate case against Lyon County, both of which include images of the involved peace

---

[1]   *Terry v. Ohio*, 392 U.S. 1, 19 (1968).

2

1  officers, despite Nevada law which makes such images confidential. *See* Nev. Rev. Stat. 289.025." (*Id.* at 2.) Generally, Defendants request a protective order because the case involves subject matter which is confidential and/or otherwise protected from public dissemination and Liu's conduct has caused concern that he may abuse the discovery process. (ECF No. 24 at 5-6.)

To support the need for a protective order, Defendants cite Liu's "(1) request to record depositions for use on YouTube, (2) previous postings made on YouTube regarding the subjects of all three of his pending lawsuits, and (3) refusal to discuss compromise with regard to restricting the use of information obtained in discovery, [as] caus[ing] great concern that he will probably abuse the discovery process to obtain information for the purpose of dissemination, rather than a legitimate purpose in litigation." (*Id.*) Defendants also list the additional concerns of Liu "(1) revealing confidential information, (2) inhibiting witnesses concerned their discovery responses may be publicized, (3) influencing witnesses who saw what other witnesses said, (4) adversely influencing the proceedings, (5) posting information compelled through discovery just for 'clicks', and (6) ignoring consent requirements, among other things." (*Id.* at 6.) Defendants also specifically reference an email from Liu to defense counsel where Liu writes that he "would like to use a screen recorder to record the depositions and use those depositions later on as content for [his] YouTube channel." (ECF No. 24-1 at 2.)

On July 18, 2023, Liu responded to Defendants' motion for a protective order. (ECF No. 27.) Liu argues a protective order is improper "[b]ecause one of the Defendants is a public entity and the other Defendant is a police officer working for the public entity, a protective order would hinder the public interest when Defendants have shown no good cause nor has provided any specific evidence that Liu has abused the discovery process." (*Id.* at 4.) Liu opposes the protective order "because Liu does not want to be accused of breaking a Court order and turn a civil case into a criminal case." (*Id.*) Liu argues that "Defendants' entire argument is built on speculation and unrelated things that have nothing to do with the lawsuit against Reno and Gauthier." (*Id.*) In addition, Liu argues

that because he informed Defendants he would not be doing depositions of any Defendants, their concern over depositions and YouTube is moot. (*Id.*) Liu argues "[w]hile Liu did ask to do video depositions and wanted the ability to record it without having to hire people, and although he thought that once the case is over, it may be something interesting to put on YouTube for educational purposes, it was just an idea and Liu was running it by Hughs first by bringing it up." (*Id.* at 7.) Liu also states he "would rather not receive discovery documents instead of having a protective order forced upon him" and he "would rather limit the scope of discovery and be prevented from discovery things so he can't break a court order." (*Id.* at 4, 9.) Finally, Liu disputes Defendants' characterization of him as a "YouTuber" and denies making money from YouTube as of that filing.[2] (*Id.* at 19.)

Defendants filed their reply on July 24, 2023. (ECF No. 30.) Defendants assert that Liu's arguments in response to the motion for protective order and in his stay motion, (ECF No. 25) (discussed below), indicate that, without a protective order, Liu may use discovery for non-case-related purposes. (*Id.* at 2-3.) Defendants also argue that Liu does not acknowledge any constraints on what he can do with any materials and information acquired through compelled discovery. (*Id.* at 2.)

### C. Motion to Stay Discovery

In response to the motion for protective order, on July 10, 2023, Liu filed a motion to stay discovery pending a ruling on the motion for protective order. (ECF No. 25.) In the stay motion, Liu claims that he does not plan to request any discovery materials from Defendants should a protective order be granted because he doesn't want to turn a civil trial into a criminal trial and be accused of violating a protective order. (*Id.* at 5-6; 8.) Liu

---

[2] To monetize YouTube videos, the channel must be a member of the "YouTube Partner Program" ("YPP"). To be eligible for the YPP, the channel must "(1) Get 1,000 subscribers with 4,000 valid public watch hours in the last 12 months, or (2) Get 1,000 subscribers with 10 million valid public Shorts views in the last 90 days." *YouTube Partner Program overview & eligibility,* YouTube.com (August 9, 2023, 2:21 PM), https://support.google.com/youtube/answer/72851?hl=en. Liu's emphasis that he is not making money from YouTube *as of this filing* belies the possibility that increased engagement could change his ability to monetize his channels.

further states he "is fine with getting redacted discovery materials but if that isn't allowed either without a protective order, then Liu is fine with not receiving any more discovery material." (*Id.* at 6.)

In response, Defendants argue the stay motion should be denied because: "(1) [Liu's] Motion does not comply with court rules, (2) he has conducted no discovery at all, (3) he is not participating in discovery in good faith, (4) he mischaracterizes relevant circumstances, and (5) he cannot demonstrate good cause for a stay." (ECF No. 29 at 2.) Defendants' response also takes issue with many characterizations and statements in Liu's stay motion. (*Id.* at 3-5.) Defendants again argue that Liu's "real reason for fearing a protective order is that he wants to publicly disseminate what he receives in discovery, and, to him, there is no reason for even conducting discovery if a protective order preventing such dissemination is in place." (*Id.* at 5.) Defendants also point out that it seems Liu is requesting an extension of discovery rather than a stay, but regardless Liu does not address the standards necessary for either request.[3] (*Id.* at 6-8.)

In reply, Liu reiterates that because "Defendants want ALL discovery to be protected, than [sic] that means ALL discovery should be stayed until the Court rules" on the motion for protective order. (ECF No. 31 at 3.) Liu characterizes the request for protective order as "asking this Court to grant a blanket protective order in a lawsuit about police misconduct and violation of constitutional rights which would include the removal of YouTube videos about the incident." (*Id.*) Liu brings up previous incidents in which he chose to redact or otherwise conceal private information when posting his YouTube videos. (*Id.* at 7-8.) As examples, Liu mentions redacting phone numbers, personal information of civilians' personal information on the bodycam video released to Liu, and obscuring a notepad in a video which showed other personal information without being

---

[3] To determine if a stay is appropriate pending the ruling on a motion to dismiss, the court considers the following factors: (1) whether the pending motion is potentially dispositive of the case; (2) whether the motion can be decided without additional discovery; and (3) whether the court is convinced that the plaintiff cannot state a claim for relief. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013). A motion or stipulation to extend time must comply with the requirements in LR IA 6-1.

directed to by a protective order. (*Id.*)

### D. Liu's Activity on YouTube

Relevant to the pending motions is the fact that Liu runs a YouTube channel. In fact, Liu's FAC includes a section entitled "Proof of Encounter" where Liu describes uploading two "YouTube Shorts" videos that "sum up the encounter" at issue in this case and provides links to both videos. (ECF No. 9 at 29.) The first video entitled, "#reno911 Unlawful Detention (Scott Gauthier) #police #crime #homeless #audittheaudit #shorts #law" ("Video 1"), was posted on December 5, 2022, and as of August 8, 2023, was viewed 28,371 times.[4] The second video entitled, "Reno911! Detained for being homeless #reno911 #police #shorts #homeless #crime #audittheaudit" ("Video 2"), was posted on December 5, 2022, and was viewed 156,400 as of August 8, 2023.[5] Video 1 identifies Gauthier by name and both videos show the interaction between Liu and Gauthier on December 3, 2022. These videos are posted by a channel named "Reno Misconduct," which has multiple other videos of a similar nature. Videos 1 and 2 were both uploaded prior to the filing of this lawsuit.

The motions currently pending before the Court concern Liu's YouTube activities beyond the two videos identified in the FAC. For example, Defendants' motion for protective order includes references to the videos Liu posted concerning the instant case and his lawsuit against Lyon County. (ECF No. 24 at 2.) Defendants specifically reference "a number of videos in which the participants do not appear to know they are being recorded and or disseminated, such as a hand held camera recording of a video conference with a manager, an audio recording of a call with managers regarding his termination and screenshots of texts from other employees." (*Id.* (footnotes omitted).) The

---

[4]  Reno Misconduct (@RenoMisconduct), *#reno911 Unlawful Detention (Scott Gauthier) #police #crime #homeless #audittheaudit #shorts #law*, YouTube (Dec. 5, 2022), [hereinafter "Video 1"] https://www.youtube.com/shorts/4uDHrel3OUs\.

[5]  Reno Misconduct (@RenoMisconduct), *Reno911! Detained for being homeless #reno911 #police #shorts #homeless #crime #audittheaudit*, YouTube (Dec. 5, 2022), [hereinafter "Video 2"] https://www.youtube.com/shorts/MwDlPRFKppY.

motion also points out that Liu often refers to his YouTube videos as "authority" in correspondence and pleadings. (*Id.*) While Liu disputes the use of the term "authority," it is undisputed that Liu consistently references his YouTube videos in filings with the Court. In response to the motion for protective order, Liu provides links to other YouTube videos to dispute Defendants' contention that Liu violated a Nevada statute making non-public images of peace officer confidential. (ECF No. 27 at 20-21.) The same motion also contains a section titled " 'TV Ratings Guy' YouTube Channel was originally created for EEOC purposes," which describes how Liu created the channel to provide the Equal Employment Opportunity Commission ("EEOC") with videos during their investigation of an unrelated matter. (*Id.* at 22-23.) In another filing, as discussed above, Liu references and provides links to previous YouTube videos where he removed or blurred potentially sensitive information. (ECF No. 31 at 7-8.)

Therefore, as the record before the Court is replete with references to Liu's YouTube activities – including in the operative complaint – and the importance of the content of the videos themselves to the determination of the pending motions, the Court reviewed Liu's "Reno Misconduct" YouTube channel. Since filing this lawsuit, Liu has continued posting videos of the incident, including in a video entitled "Suing the cop who detained me #police #homeless #shorts" ("Video 3") which was posted on June 4, 2023.[6] Based on the timestamp that appears in the video, it appears to be the bodycam footage of the alleged stop which forms the basis of the lawsuit. All videos posted to the "Reno Misconduct" channel appear to have been edited. Therefore, the timing of events occurring during the videos are unclear.

On June 3, 2023, Liu also posted a video titled "*Reno cop requires ID in 'high crime area,'*" ("Video 4") which shows bodycam footage from December 3, 2022, as can be

---

[6]  Reno Misconduct (@RenoMisconduct), *Suing the cop who detained me #police #homeless #shorts*, YouTube (Jun. 4, 2023), [hereinafter "Video 3"] https://youtube.com/shorts/ALpZu4XUkaI?feature=share.

7

discerned from the timestamp in the video.[7] At certain points during the video, Liu inserts his own footage from the incident. Ten days later, Liu posted "part 2" of Video 4 titled "What happens after you file a complaint against Reno police?" ("Video 5").[8] In the caption for Video 5, Liu writes "for more context, please watch the video about the Gauthier detainment" and directs viewers to Video 4. Video 5 includes the bodycam footage from December 4, 2022, Liu's own footage of the incident, and footage of other interactions between Liu and the Reno Police Department.

Liu admits that he received three redacted bodycam videos from Defendants during discovery in this case. (ECF No. 27 at 10.) The time stamps on the bodycam videos in Videos 3, 4, and 5 start at 10:48 P.M. on December 3, 2022, (*see* Video 3 at 0:00 seconds; *see* Video 4 at 0:00 seconds), and continues into the early morning hours of December 4, 2022 (*see* Video 5 at 0:00 seconds). In Liu's FAC, he lists the time of the first interaction with Gauthier as 10:48 P.M. on December 3, 2022. (ECF No. 9 at 6.)

## II.    LEGAL STANDARD

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). "The discovery process in theory should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg. Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). Nonetheless, a party from whom discovery is sought may move for a protective order to prevent annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). A "protective order prevents a party from disseminating only that information obtained through use of the discovery process." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

---

[7]    Reno Misconduct (@RenoMisconduct), *Reno cop requires ID in "high crime area,"* YouTube (Jun. 14, 2023), [hereinafter "Video 4"] https://youtu.be/ocDjlztz8Vk.

[8]    Reno Misconduct (@RenoMisconduct), *What happens after you file a complaint against Reno police?,* YouTube (Jun. 17, 2023), [hereinafter "Video 5"] https://youtu.be/AnhhS-VUo6s.

The party seeking issuance of a protective order bears the burden of persuasion. *U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (citing *Cipollone v. Liggett Grp.*, 784 F.2d 1108, 1121 (3d Cir. 1986)). Such a burden is carried by demonstrating a particular need for protection supported by specific facts. *Id.* To that end, courts "insist[] on a particular and specific demonstration of fact, as distinguished from conclusory statements," to issue a protective order. *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient. *Caesars Entertainment*, 237 F.R.D. at 432. A showing that discovery may involve some inconvenience or expense is likewise insufficient to obtain a protective order. *Turner Broad. Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997). Courts are more likely to prohibit the public dissemination of audiovisual recordings of depositions than written transcripts because "videos can more easily be abused as they 'can be cut and spliced and used as 'soundbites' on the evening news or sports shows.' " *Katz v. Steyn*, 2019 WL 3211070, at *4 (D. Nev. Mar. 25, 2019) (citing *Stern v. Cosby*, 529 F.Supp.2d 417, 422 (S.D.N.Y. 2007)) (internal citations omitted).

District courts possess "wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection." *Swenson v. GEICO Cas. Co.*, 336 F.R.D. 206, 209 (D. Nev. Aug. 19, 2020) (quoting *Grano v. Sodexo Mgmt., Inc.*, 335 F.R.D. 411, 414 (S.D. Cal. Apr. 24, 2020)). The Supreme Court has found "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required," as the "trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times*, 467 U.S. at 32 (1984) (citing *Zemel v. Rusk*, 381 U.S. 1, 36 (1965)). Where grounds for a protective order have been established, courts have a variety of options to rectify the situation,

including preventing the discovery or specifying the terms on which the discovery will be conducted. Fed. R. Civ. P. 26(c)(1)(A), (B).

## III.    DISCUSSION

First, it is important to note that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) (citing *Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information")). Specifically, "pretrial depositions and interrogatories are not public components of a civil trial." *Id.* at 33. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information. *Id.*

When evaluating whether to grant a protective order in cases such as the one at bar, the mere possibility that the online posting of a videotaped deposition will be misused is insufficient grounds for the issuance of a protective order. *Katz*, 2019 WL 13211070 at *6 (citing *Stern*, 529 F.Supp.2d at 422; *Burgess v. Town of Wallingford*, 2012 WL 4344194, at *8 (D. Conn. Sept. 21, 2012)). However, a "clear and specific threat that a party or person will use discovery materials in an abusive manner may also constitute good cause for a protective order." *Id.*

Here, there is a clear and specific threat that a party will use discovery materials in an abusive manner. Liu explicitly stated in an email to Defendants that he "would like to use a screen recorder to record the depositions and use those depositions later on as content for [his] YouTube channel." (ECF No. 24-1 at 2.) To enforce this point, Liu included a reference to a YouTube link that purportedly shows a deposition of former New York Governor Cuomo. (*Id.*) Liu later attempts to clarify this request by stating "he would like to use the depositions later after the lawsuit is finished as he has an educational background." (ECF No. 27 at 9.) However, regardless of the purpose for which Liu would use the deposition videos, Liu does not deny that he intends to use the deposition videos for purposes other than litigating the instant suit.

In fact, from the Court's review of Liu's "Reno Misconduct" YouTube channel, it is clear Liu is already using the instant lawsuit as content for his channel. For example, in Video 3, Liu includes his own cell phone footage of Gauthier with the text "Defendant" above his head and the Court's electronic filing system's notice of summons issued as to Reno and Gauthier. This video not only shows that Liu is suing Gauthier and the City of Reno and identifies Gauthier as a Defendant, but Liu also *actually uses* documentation from the litigation itself in the form of the summons docket entry.

In another portion of Video 3, Liu writes "Please Subscribe" on the top of the video. As previously mentioned, to monetize one's YouTube channel, the channel must "(1) Get 1,000 subscribers with 4,000 valid public watch hours in the last 12 months, or (2) Get 1,000 subscribers with 10 million valid public Shorts views in the last 90 days." *YouTube Partner Program overview & eligibility,* YouTube.com (August 9, 2023, 2:21 PM), https://support.google.com/youtube/answer/72851?hl=en. From the "Please Subscribe" text, it appears that Liu is trying to increase engagement on his channel by using the instant lawsuit as content. This, in connection with the statement that Liu's channel is not yet monetized, strengthens the inference that Liu intends to use this suit as content for his channel to increase viewership.

Finally, as discussed above, Liu uses actual bodycam footage from the incident which precipitated this lawsuit in his videos in Videos 3, 4, and 5. Liu's use of the bodycam footage on his YouTube channel is more than a "clear and specific threat that a party or person will use discovery materials in an abusive manner," the video crosses the line into *actual* use of the materials in an abusive manner. *Katz*, 2019 WL 13211070 at *6. Therefore, based on the above, the Court finds Defendants have sufficiently demonstrated good cause for the entering of a protective order. *Caesars Entm't, Inc.*, 237 F.R.D. at 432 (citations omitted). The Court will adopt the proposed protective order, (ECF No. 24-5), in a separate order.

///

///

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for protective order, (ECF No. 24), is **GRANTED**;

**IT IS FURTHER ORDERED** that Liu's motion to stay discovery pending determination of the motion for protective order, (ECF No. 25), is **DENIED** as moot.

**DATED**: August 17, 2023.

_____
**UNITED STATES MAGISTRATE JUDGE**